ESTATE OF JESSIE H. RAND, DECEASED, FRANK C. RAND, JOSEPH O. RAND, AND FRED L. RAND, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81984.   Promulgated December 15, 1937.

*Stanley S. Waite, Esq.*, for the petitioner.
*Ralph E. Smith, Esq.*, for the respondent.

1164

OPINION.

ARNOLD: The controlling statute, section 302 (c) of the Revenue Act of 1926, is set out in the margin.[1] The respondent's theory is that the gifts, although made six and four years, respectively, prior to decedent's death, were made in contemplation of death. In support of his theory respondent contends that decedent's "dominant motive" in making the gifts was to reduce her estate and avoid the estate tax as to her property. It is urged that, since avoidance of the estate tax was the "dominant motive", it follows that the gifts were made in contemplation of death.

It is frankly conceded by respondent that decedent had other motives for making her transfers in addition to what he terms the "dominant motive." He has conceded that one of decedent's motives was her desire to see her children enjoy the benefits of the property given during her lifetime. He concedes that another motive was her desire to avoid the Alabama personal property tax, and that still another motive was her desire to avoid the Federal income tax. But he contends that the principal motive, the one that primarily moved her to make these transfers, was her desire to avoid the Federal estate tax.

On their part the petitioners contend that decedent was motivated solely by the following desires: (a) to give to her children so she could see them enjoy the property while she lived; (b) to save Federal income taxes; and (c) to save Alabama personal property taxes. Petitioners deny, however, that decedent considered the possibilities of her own death, or any savings in death duties which might result from these transfers.

Whether property alleged to have been transferred in contemplation of death should be included in a decedent's gross estate rests

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

primarily upon the particular facts of each case. The very nature of the question requires an examination of the motives and reasons which activated the decedent. The state of her health and mind at the time of making the gifts and her purpose in making them are of the utmost importance in determining whether the transfers were made in contemplation of death. *Edith Huggard Sharp et al., Executors*, 33 B. T. A. 290; *United States* v. *Wells*, 283 U. S. 102.

The Supreme Court has pointed out in the *Wells* case, *supra*, that it is not the general expectation of death which all entertain, that is meant by the statutory expression "contemplation of death", but that "the thought of death is the impelling cause of the transfer." The Court states that, where the disposition of property springs from a different motive, the statute does not embrace it, and particularly points out the dispositions of property related to purposes associated with life, rather than in anticipation of death.

The record in this case establishes clearly the deep and motherly affection which existed between the decedent and her children. She visited them while living, gave equally to them of her bounty so they could all be established in their homes and businesses, and upon her death distributed the residue among them, share and share alike. Her letters to them indicated a desire to help, with no hint of an apprehension of death. Her physical condition had been unchanged for years, and no organic trouble was discovered in an examination occurring approximately two years after the last transfer. Her disposition was cheerful, and even her last illness was not considered serious until a few days before her death. We can not believe under these circumstances that death was the impelling cause of the transfers here questioned.

The respondent urges, however, that, if the desire to avoid estate taxes on her property was the "dominant motive", that would be sufficient to bring the transfers within the meaning of the statute. He relies particularly upon the testimony of Todd, the cashier of the bank at which decedent did business, which he brought out on cross-examination as follows:

Q. In addition to the discussion of Federal income tax there was also a discussion with reference to tax in event of her death?

A. No, except to this extent—when she called on the telephone and told me that she wanted these securities sent off, she referred to the estate and other Federal tax, and made the remark that she had been wanting to give them to the children for a good while, and she believed she would do it.

\* \* \* \* \* \* \*

Q. By that she realized that by making the transfer the estate tax would be reduced, did she not?

A. I should think she would have by making the transfers, I cannot say what she realized, but that is what I thought she had in mind.

Q. Did she not say so?

A. I think she did.

We are unable to attribute to this testimony the weight respondent gives to it. The witness expressed a conclusion of his own regarding a statement made to him by the decedent over the telephone. He denies there was any discussion of estate taxes, which squares exactly with the rest of the record. Certainly, if death and estate taxes were the principal concern in making the transfers, the letters from decedent's brother would have made some reference indicating that apprehension. On the contrary, every communication from brother to sister, and from mother to children, indicates an intention to divide the property equally among the children for their benefit, so the mother could have the pleasure of watching her children enjoy the gifts.

It is unquestionably true that the transfers enabled the decedent to relieve herself of the responsibility of paying certain taxes. It may well be that she appreciated that she would save in taxes by the transfers, but the evidence could be far less convincing than that here adduced, and still justify us in disapproving the respondent's determination. Had she been primarily concerned in avoiding estate taxes, as respondent insists, we doubt that she would have failed to distribute a much larger proportion of her estate. Nor would she have delayed so long as four years in making another distribution, if the distributions of 1927 and 1929 were impelled by the thought of death. The conclusion is inescapable that the impelling motive was thoughts of life and love, and the savings in taxes were merely a gratifying incident of the transfers.

In view of the foregoing we deem it unnecessary to review the extensive list of authorities presented by counsel. We would direct attention to the similarity of facts in the *Wells* case, *supra*, to the facts herein, and to the similarity of facts in *Cecil H. Gamble, Executor*, 33 B. T. A. 94.

For the reasons stated the respondent's inclusion of the value of the property transferred in 1927 and 1929 in decedent's gross estate is disapproved. The deficiency should be recomputed, giving effect to the deduction of $300 to which petitioners are admittedly entitled, to the $44 valuation for the common stock of the company, which petitioners concede, and to our opinion herein.

*Decision will be entered under Rule 50.*