ESTATE OF JAMES GILBERT, DECEASED, CHARLOTTE K. GILBERT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19344. Promulgated March 2, 1950.

*Alfred M. Schaffer, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

352

OPINION.

ARUNDELL, *Judge*: Two issues arise herein under the provisions of section 811 (c) of the Internal Revenue Code:[3] First, whether the transfers of stock by decedent to his wife in December, 1940, and January, 1941, were made in contemplation of death, and, secondly, whether such transfers were intended to take effect in possession or enjoyment at or after decedent's death within the meaning of the statute.

---

[3] SEC. 811.  GROSS ESTATE. [As amended by sec. 7 of Public Law 378, 81st Cong., known as the "Technical Changes Act of 1949" and made applicable to the estates of decedents dying after February 10, 1939.]

\*    \*    \*    \*    \*    \*    \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH :

(1) GENERAL RULE : To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) by trust or otherwise—

(A)  in contemplation of his death.  Any transfer of a material part of his property in the nature of a final disposition, or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter ; or

(B)  under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

(C)  intended to take effect in possession or enjoyment at or after his death.

(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949: An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property.  For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him.  \*   \*   \*

A transfer is regarded as made in contemplation of death where the dominant motive or impelling cause of the transfer is the thought of distributing property in anticipation of death rather than a purpose associated with life. "Death must be 'contemplated', that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition." *United States* v. *Wells*, 283 U. S. 102; *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630.

In the instant case, decedent died more than four years after the transfers in controversy and therefore no statutory presumption exists in support of the respondent's determination. Moreover, we are of the opinion that the evidence substantiates petitioner's claim that the transfers were not in the nature of testamentary dispositions of property made in contemplation of death.

Decedent's principal motive for transferring 37 shares of Gilbert Casing Co. stock to his wife in December, 1940, was to allay his wife's fears and suspicions that he would yield to the demands of his brothers and former partners to be admitted to the business. The record shows that decedent had formerly been associated with these men and had experienced difficulties which led him to abandon a prior business and establish the Gilbert Casing Co., of which he was president and sole stockholder until the time of the transfers in question. Decedent's transfer of an additional 400 shares approximately a month later appears to have been in response to his wife's objections that the transfer of a mere 37 of the 1,000 shares of stock outstanding did not put her in a position where she could effectively prevent the intrusion of his family and former partners into the business.

In our opinion, there was no relation between decedent's decision to transfer the shares of stock to his wife in December, 1940, and January, 1941, and the intestinal ailment from which he suffered and in connection with which he was hospitalized in July, 1939. The hospital records indicate that decedent made an uneventful recovery and was discharged as cured on August 30, 1939. Except for a short period in August and September, 1941, at which time decedent was again hospitalized for the purpose of undergoing a second intestinal operation, he apparently enjoyed good health.

Until the very day of his death, decedent was unusually active in the management of his business affairs and traveled extensively throughout the country. There is evidence that decedent started a new business in Chicago in 1944.

There appears to have been no recurrence of decedent's intestinal ailment after September, 1941, and his sudden death on April 19, 1945, from a cerebral hemorrhage came without warning.

Respondent argues that the conditions incorporated in the stock transfers and the decedent's execution of a new will on January 7, 1941, are evidence of a testamentary state of mind. However, in our

opinion, the conditions attached to the stock in the hands of his wife are in accord with petitioner's explanation that decedent's real motive was to satisfy his wife's demands without endangering the best interests of the business. Nor do we feel that petitioner's drawing of a new will identical in terms with a prior will executed in 1937 necessarily indicates that the decedent made the stock transfers as an adjunct to some over-all testamentary plan.

After careful consideration of all the evidence, it is our conclusion that the decedent's transfers of 37 shares of stock in December, 1940, and 400 shares of stock in January, 1941, were not made in contemplation of death within the meaning of section 811 (c).

The remaining question is whether such transfers were intended to take effect in possession or enjoyment at or after decedent's death. Respondent contends that the stock transfers were so limited by the agreements executed by the parties and by other concurrent events as to indicate clearly a retention of control by the decedent and an intent that the transfers should not be complete until at or after the time of his death.

Incident to the transfer of 37 shares of stock in December, 1940, decedent and his wife executed an agreement on December 31, 1940, providing that the Gilbert Casing Co. was authorized to pledge that stock as security for loans; that the decedent was to have the right to reacquire the stock at the same price and on the same terms as any bona fide offer made by a third party in writing within 30 days of receiving notice of the offer; that the stock would revert to decedent upon his wife's death; and that the wife would bequeath to him by will any and all such stock owned by her at the time of her death.

The bylaws of the corporation were amended on January 11, 1941, in connection with decedent's contemplated transfer of a larger block of stock to his wife, and the 30-day option requirement was thereby imposed upon all of the corporation's outstanding stock.

By agreement dated January 20, 1941, decedent transferred, assigned, and conveyed to his wife 400 shares of stock in the corporation "as her own personal property and with all the benefits of ownership." This agreement, signed by the decedent, his wife, and the secretary of the corporation, by its terms revoked the agreement of December 31, 1940, in so far as any of its provisions were inconsistent with the new agreement, and ratified and confirmed the earlier agreement otherwise. In the agreement of January 20, 1941, the parties confirmed the option privilege given the corporation over all stock by the resolution of January 11, 1941, and authorized the corporation to pledge the stock owned by them as security for corporate loans. It was also agreed that all stock of the corporation owned by the wife at the time of her death would revert to the corporation by way of a specific bequest made by the wife in her will.

Under both agreements decedent agreed to hold his wife harmless in the event of any loss resulting from the hypothecation or pledge of any of her stock on behalf of the corporation.

Stock certificates representing 437 shares of stock were delivered to the wife on or about January 20, 1941, who thereafter endorsed them and returned them to her husband, requesting a receipt therefor. The certificates henceforth remained in his custody until his death.

Viewing, as we must, the agreements executed by the parties and all the circumstances attendant upon the transfers as interrelated events in a single transaction, it is readily apparent by the terms and conditions attached to the gifts of stock that decedent, by the express terms of the instrument of transfer, retained to himself or to his estate a reversionary interest in the property transferred.

The testimony of the wife is that the impelling reason for the transfer of the stock to her was because she had "nagged" her husband over a period of time to give her a sufficient stock interest in the corporation to bar the possibility that decedent's brothers or former partners would be brought into the business.

The agreement of January 20, 1941, specifically recites the intention of decedent, wherein it states that in making "an absolute gift" of certain shares to his wife, he desired "to safeguard the efficient continuance of the business * * * under the present management and avoid the possibility of any of the stock * * * falling into the hands of parties not actively engaged or interested in the operation of said business." Decedent further stated in the agreement that it was his desire to insure the return of any stock owned by his wife to the treasury of the corporation upon her death. That it was the intention of the parties that the wife's interest in the stock was to be limited to nominal ownership is evidenced by the express provisions contained in the instruments of transfer relating to the corporation's right to repurchase or pledge the stock, and the final condition which required her to will such stock as she owned at her death to the corporation. Apparently to provide for the possibility that the wife might find a purchaser for the stock, the agreement provided that all the conditions and covenants therein were binding upon the heirs, personal representatives, successors, and assigns of the parties.

Moreover, the conduct of the parties and the status of the wife in respect to the stock subsequent to the transfers add further support to the conclusion that the transaction was one under which the decedent retained a reversionary interest in, and the possession and enjoyment of, the property for a period which, in the language of the statute, would not in fact end before his death.

As we have previously pointed out, decedent's wife, immediately upon receipt of the stock certificates, endorsed them and returned them to decedent, who thereafter until his death retained them in his

safe deposit box, to which he alone had access. Even prior to the actual transfer of the stock, the wife executed a will in which she bequeathed to the corporation any and all stock which she might possess or to which she might be entitled at the time of her death.

The wife's technical ownership of 437 shares of stock in the Gilbert Casing Co. gave her no effective power to remove or lessen the restrictions imposed upon her, and, as pointed out by the preamble to the agreement of January 20, 1941, it was intended that the determination of all matters of policy was to remain vested solely in the decedent.

Although the transfer in question conceivably may be viewed as one which gave the wife the power to dispose of the stock at any time by sale, a reasonable appraisal of the whole transaction shows that her right to sell was so hedged with restrictions as to be virtually non-existent. This conclusion is supported by the fact that the agreement of January 20, 1941, provides, as we have already stated, that the covenants and conditions thereof should be binding upon the heirs, personal representatives, successors, and assigns of the parties. Thus, it would seem that any prospective purchaser which the wife might find would have been confronted with the necessity of purchasing her stock subject to all existing restrictions. As the acquisition of 437 shares of stock would provide no effective means of forcing the removal of the restrictions, the payment of dividends, or the liquidation of the corporation, it is difficult to believe that such a willing purchaser could have been found.

The Supreme Court recently had before it questions arising under the "possession or enjoyment" provision of section 811 (c) of the Internal Revenue Code, in the companion cases of *Commissioner* v. *Estate of Church*, 335 U. S. 632, and *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701. In those cases it was held that:

* * * a trust transaction cannot be held to alienate all of a settlor's "possession or enjoyment" under § 811 (c) unless it effects "a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor live or dies." * * * it is immaterial whether such a present or future interest, absolute or contingent, remains in the grantor because he deliberately reserves it or because, without considering the consequences, he conveys away less than all of his property ownership and attributes, present or prospective. In either event the settlor has not parted with all of his presently existing or future contingent interests in the property transferred. He has therefore not made that "complete" kind of trust transfer that § 811 (c) commands as a prerequisite to a showing that he has certainly and irrevocably parted with his "possession or enjoyment." [*Estate of Spiegel* v. *Commissioner, supra.*]

By its very terms, section 811 (c) applies to transfers "by trust *or otherwise*." (Italics supplied.)

It is true that the scope of the decisions of the Supreme Court in *Commissioner* v. *Estate of Church, supra,* and *Estate of Spiegel* v. *Commissioner, supra,* have been considerably limited since the hearing of this case by the Congressional enactment of section 7 (a) of the "Technical Changes Act of 1949," applicable under section 7 (b) of the same act to estates of decedents dying after February 10, 1939. The parties have not discussed on brief the possible effect of these amendments upon the issue herein. However, it is our conclusion that the transfers in question fall within the ambit of the amended statute either as transfers under which the decedent "retained * * * for any period which does not in fact end before his death the possession or enjoyment of * * * the property" within the meaning of section 811 (c) (1) (B) or as transfers "intended to take effect in possession or enjoyment at or after his death" under section 811 (c) (1) (C), for the reason that decedent "retained a reversionary interest in the property, arising by the express terms of the instrument of transfer * * *." It may be noted that there is no evidence in the record, nor has any suggestion been made, that the so-called reversionary interest had a value immediately before the death of decedent of less than 5 per cent of the property transferred. See section 811 (c) (2), *supra.*

Nor do we think that it is of any avail to the petitioner to argue that the benefits of the various rights reserved by the instruments of transfer flowed to the corporation rather than to the decedent individually. Decedent, from the inception of the corporation until the dates of the stock transfers, was the sole stockholder and directing head of the business, and even after the transfers held a controlling interest in the corporation and continued to exercise full control over its policies and management. Decedent did not agree to will his stock interest to his wife, and he was able, by virtue of his stock ownership, to remove at any time the restrictions as to the sale or hypothecation of corporate stock, including his own. On the other hand, he possessed the power to enforce, in the name of the corporation, as its controlling stockholder, any or all of the conditions attached to the stock held by his wife and thus directly benefit himself.

In our opinion it is not important that decedent transferred the shares directly to his wife under the terms of a contract that she would execute a will leaving her stock to the corporation rather than employing a form of conveyance in which the right to receive the shares on Mrs. Gilbert's death was retained. Distinctions of this type, based upon the "various niceties of the art of conveyancing" and recognized

in *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, were held in *Helvering* v. *Hallock*, 309 U. S. 106, to be of no consequence.

It is abundantly clear that the stock transfers at the time they were made were not complete transfers divesting decedent absolutely and unequivocally of all "possession or enjoyment" of the stock. The contract provisions granting to the corporation the right to repurchase or pledge the stock, in conjunction with the requirement that Mrs. Gilbert will her stock to the corporation, all of which provisions were made binding on her heirs, personal representatives, successors, and assigns, were tantamount to the decedent's retention of a reversionary · interest in the property transferred. It follows that under the rule of *Estate of Spiegel* v. *Commissioner*, *supra*, and the provisions of section 811 (c), as amended, the value of the 437 shares is includible in the gross estate of the decedent.

*Decision will be entered under Rule 50.*