ESTATE OF ELIZABETH D. HILL, DECEASED, GERARD SWOPE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44271. Filed December 31, 1954.

*Francis L. Casey, Esq.,* and *Robert S. Dorsey, Esq.,* for the petitioner.

*John J. O'Toole, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $19,081.17 in estate tax. The only question for decision is whether the Commissioner erred by including in the gross estate under section 811(c)(1)(A) or (C), property transferred by the decedent to a trust created by her on May 1, 1929. The parties have filed a stipulation of facts which is adopted in its entirety, including the exhibits which are a part of it, as findings of fact.

Elizabeth D. Hill died testate on May 28, 1948, while residing in New York. The estate tax return for her estate was filed with the collector of internal revenue for the third district of New York.

Mary E. Hill died in November 1928. Her survivors were four daughters, Sarah C. Hill, Henrietta D. Hill, Mary Hill Swope, and Elizabeth D. Hill, the present decedent. Mary Hill Swope renounced all interest in the estate of her mother in favor of her three unmarried sisters, and the mother's estate was distributed in equal shares to those three sisters. The latter created irrevocable trusts on May 1, 1929, and placed in each of those trusts one-third of the property which they had just received from their mother's estate. A New York bank was named as trustee of each trust. Elizabeth was then 62 years of age, Henrietta was 60, and Sarah was 53. They lived together. The three sisters were never employed or engaged in business at any time during their lives.

Elizabeth signed one trust instrument. It provided that Henrietta was to receive the net income from that trust during her life and, if Elizabeth and Sarah survived her, the trustee was to divide the principal into two equal funds and continue to hold one in trust for Elizabeth for her life and the other in trust for Sarah for her life. If either Elizabeth or Sarah died, the principal of the trust then held for that one's benefit should be paid over absolutely to the other, and when the last one died the principal of the trust being held for her benefit was to be distributed among the children of Mary Hill Swope. In case only one of the other two sisters survived Henrietta, the trustee was to continue to hold the principal of the entire fund in trust for the benefit of that one for life and upon her death distribute the principal to the children of Mary. The trustee was to distribute the principal of the entire fund among the children of Mary living at the death of Henrietta if neither Elizabeth nor Sarah survived Henrietta.

The other two trusts were identical except that Sarah signed the trust in which Elizabeth was named as life beneficiary, and Henrietta signed the trust in which Sarah was named life beneficiary, and in each the sisters not named as life beneficiaries were named as secondary life beneficiaries and possible remaindermen.

The three unmarried sisters executed wills for the benefit of each other on or about May 15, 1929. Henrietta died on March 16, 1945. Sarah is still living.

No part of any of the three trusts was reported as a part of the gross estate in the estate tax return for the estate of Elizabeth.

The Commissioner, in determining the deficiency, added to the value of the net estate $128,094.69 described as "Transfers during Decedent's Life." He explained, "It is determined that the date of death value of the transfer made on May 1, 1929, is includible in the gross estate pursuant to the provisions of section 811 (c) of the Internal Revenue Code."

The evidence consists of the stipulation and the testimony of one witness, Gerard Swope, the husband of Mary and the brother-in-law of the three unmarried Hill sisters. The following facts are found from the testimony of Gerard Swope:

Gerard Swope, now retired, was formerly president of General Electric Company and as such was familiar with and engaged in financial activities such as the making of investments.

He was the executor of the estate of his mother-in-law, Mary E. Hill, and he was also the adviser of his three unmarried sisters-in-law. He wanted to simplify the affairs of the latter both for them and on his own account. He sought the advice of a lawyer friend who recommended another lawyer, and the latter acted as legal counsel in the creation of the trusts. Swope conferred with him and the two of them conferred with the three sisters. Swope suggested that the sisters create trusts. The lawyer recommended the wording of the trusts. They discussed the proposed trusts with the sisters and advised the latter to create the trusts. The sisters accepted the advice and created the trusts.

The creation of the trusts was in no way prompted by the condition of the health of the three sisters.

Each of the three sisters had a small amount of property in addition to that placed in the trusts. At the time they were discussing the trusts, they also discussed with Swope and the lawyer the drawing up of wills. Swope was named executor in each of the wills executed by the sisters on or about May 15, 1929.

The Commissioner argues that there has been no showing here that the primary motive for the creation of these trusts was one connected with life rather than one connected with death; there is a strong

inference arising from the evidence that the primary motive behind the creation of the trusts was the avoidance of estate tax; and the evidence as a whole on this point certainly does not overcome the presumption of correctness attaching to the determination of the Commissioner that this trust comes within section 811 (c) (1) (A). Counsel for the petitioner, before calling Swope as a witness, stated in effect that the three unmarried sisters were inexperienced in business or financial matters and created the trusts so that their inheritances would be handled during their lives by people experienced in such matters with the result that the income would be preserved for their support and maintenance. However, this statement is not evidence and Swope did not testify that the primary purpose behind the creation of the three trusts was to relieve the sisters of the management of their inheritances. The record as a whole does not establish any such fact or show that the sisters were incapable of handling their affairs without the use of a trust.

If the primary purpose behind the creation of the trusts was the avoidance of estate tax, then the transfer here in question was in contemplation of death within the meaning of section 811 (c) (1) (A). *Estate of Frank A. Vanderlip*, 3 T. C. 358, affd. 155 F. 2d 152, certiorari denied 329 U. S. 728. The Commissioner of Internal Revenue had taken the position, at and prior to the time when these trusts were created, that the value of every trust should be included in the gross estate of the grantor where the latter retained the right to the income of the trust for life. That was held to be erroneous later, in 1930, when the Supreme Court handed down its decision in *May* v. *Heiner*, 281 U. S. 238. It is reasonable to believe, as the Commissioner argues, that the complicated form of these trusts was adopted for the purpose of avoiding estate taxes upon the estates of the three sisters, that is, the purpose was to have no sister give herself a life estate under the trust of which she was the grantor. There is no fair preponderance of the evidence to show that avoidance of estate tax was not a motive of primary importance or that there was some other motive connected with life which was of greater importance.

The Commissioner argues also that this decedent, Elizabeth, retained a possibility of reverter in the property which she conveyed in trust and, therefore, the value of the entire trust must be included in her gross estate under sections 811 (c) (1) (C) and 811 (c) (2). The trust instrument signed by Elizabeth expressly provided that one-half of the corpus of that trust should revert to her absolutely if Henrietta died first and Sarah died next, and likewise the trust signed by Henrietta contained similar provisions under which one-half of that trust should be distributed to Elizabeth. The parties have stipulated that

if there was a reservation it was worth more than 5 per cent of the trust property. Thus, the Commissioner's argument in this connection is sound and apparently is conceded to be sound if Elizabeth is to be regarded as the grantor of the trust which she created giving her sister Henrietta a life estate of the corpus thereof. *Estate of James Gilbert*, 14 T. C. 349, 357, 360. The petitioner recognizes that if Elizabeth had placed her inheritance in trust so that the income would be paid to her for life and the sole beneficiaries thereafter would be her surviving sisters or surviving children of her sister Mary, the value of the trust property would not be subject now to estate tax as a part of her gross estate. Therefore, the petitioner argues that these were "reciprocal trusts" and, under the fiction of the reciprocal trust doctrine, Elizabeth cannot be regarded as the grantor of the trust of which Henrietta was the life beneficiary but must be regarded as the grantor of the trust under which she was the life beneficiary. The fact is, however, that deliberately, after much thought and upon advice of her brother-in-law and counsel, Elizabeth became the grantor of the trust under which Henrietta was the life beneficiary and all parties intended at that time that she should be the grantor of that trust rather than the grantor of the trust under which she was to have a life estate. The arrangements which Elizabeth made so deliberately in 1929 cannot now be rearranged to relieve her estate of tax merely because there was another method open to her at that time which would not have resulted in any estate tax.

There is no such magic, beneficial to the petitioner, in any reciprocal trust doctrine. If the trusts were "reciprocal," as the petitioner contends, their creation was an integral plan, of which each trust and each act of each sister was an inseparable part, and each sister, including Elizabeth, the decedent herein, by becoming a party to that indivisible plan, arranged to retain a possibility of reverter either in the property which she then owned and placed in trust or in property which her sisters then placed in trust, in which property she thereby acquired an interest for a valuable consideration. The doctrine of reciprocal trusts cannot be invoked by this petitioner to substitute fiction for fact solely for the purpose of avoiding the estate taxes which the original plan was intended but failed to avoid. That doctrine is a rule sometimes resorted to by courts in order to do equity, but the petitioner is in no position to ask for its application in view of the fact that the sisters in 1929 intended to do exactly what they did do. The Supreme Court in *Higgins* v. *Smith*, 308 U. S. 473, p. 477, while discussing a somewhat different situation used the following words which are apposite here:

A taxpayer is free to adopt such organization for his affairs as he may choose and having elected * * * he must accept the tax disadvantages.

On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation.

Thus the fact that the Government has resorted to the reciprocal trust doctrine in other cases involving different factual situations does not require its application here.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

VAN FOSSAN, *J.*, dissents.