Mrs. Mildred O'Connor **BUTTERWORTH**
and Mrs. Camille O'Connor Agnew,
Plaintiffs,

v.

Chester A. **USRY**, District Director of
Internal Revenue, Defendant.

Civ. A. No. 5590.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 26, 1959.

M. Hepburn Many, U. S. Atty., Prim B. Smith, Jr., Asst. U. S. Atty., New Orleans, La., for defendant.

BOOTLE, District Judge, designate.

This suit is by the two daughters, sole heirs, of Mrs. Camille Bertel O'Connor for the recovery of estate taxes assessed by the Commissioner of Internal Revenue, paid by plaintiffs and the subject of a claim for refund which was denied. While the complaint as drawn attacks other adjustments made by the Commissioner, the plaintiffs, by concessions at the trial, have limited this lawsuit to

one question; namely, whether the Commissioner erred in including in the decedent's gross estate, as transfers made in contemplation of death, the value of 200 shares of the capital stock of the Whitney National Bank of New Orleans and cash in the amount of $6,000, 103 shares of the stock and $3,000 in cash having been transferred by decedent without consideration to each of the plaintiffs, the cash on August 17, 1951 and the stock on August 28, 1951, approximately thirteen months prior to her death intestate on September 5, 1952.

Section 811 of the Internal Revenue Code of 1939 provides, in pertinent part, as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(c) [as amended by section 7(a), Act of October 25, 1949, c. 720, 63 Stat. 891, and by Section 501 of the Revenue Act of 1950, c. 994, 64 Stat. 906]. Transfers in contemplation of, or taking effect at, death

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death; or

\* \* \* \* \* \*

"(l) Contemplation of death. If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d), and (f); but no such transfer, relinquishment, exercise, or release made prior to such three-year period shall be deemed or held to have been made in contemplation of death. (26 U.S.C. 1952 ed., Sec. 811)."

Under the above quoted statute, Sec. 811(c) (1) (A), this inclusion by the Commissioner was properly made if the transfers were made "in contemplation of * * * death", and inasmuch as the transfers were made within a period of three years prior to decedent's death (gifts, August 17 and 28, 1951; death, September 5, 1952), they must, unless shown to the contrary, be decreed to have been made "in contemplation of death". Section 811(c) (1). Thus, in addition to the presumptive correctness of the Commissioner's determination in all tax refund suits, United States v. Rindskopf, 1881, 105 U.S. 418, 26 L.Ed. 1131; United States v. Anderson, 1926, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347; Reinecke v. Spalding, 1930, 280 U.S. 227, 232–233, 50 S.Ct. 96, 74 L.Ed. 385; Welch v. Helvering, 1933, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Old Mission Portland Cement Co. v. Helvering, 1934, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367; Helvering v. Taylor, 1935, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623; Commonwealth Trust Co. of Pittsburgh v. Driscoll, D.C.W.D. Pa.1943, 50 F.Supp. 949, affirmed per curiam 3 Cir., 1943, 137 F.2d 653, certiorari denied 1944, 321 U.S. 764, 64 S. Ct. 521, 88 L.Ed. 1061; Neal v. Commissioner, 8 Cir., 1931, 53 F.2d 806, there is the specific statutory presumption above quoted. This doubly founded presumption requires the plaintiffs to carry the burden of proving that the transfers were not made in contemplation of death. McCaughn v. Real Estate Land Title & Trust Co., 1936, 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879; O'Neal's Estate v. Commissioner, 5 Cir., 1948, 170

F.2d 217, 220; Humphrey's Estate v. Commissioner, 5 Cir., 1947, 162 F.2d 1, 2; McClure v. Commissioner, 5 Cir., 1932, 56 F.2d 548, 550. The force and effect of this statutory presumption is stated by Judge Learned Hand in First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 1943, 134 F.2d 940, 941, certiorari denied, 1943, 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 442, as follows:

"If the Treasury had sued the executors for the tax, it could safely have rested its case after proving that Ballard had died within two years, and the executors would then have been obliged to bring forward some evidence that he had not made the gift in contemplation of death. Here however the positions are reversed, for the executors, who have paid the tax, allege that it is unjust for the collector to keep it because it was not due. To make good that claim they must not only bring forward some evidence that Ballard did not make the gift in contemplation of death, but they must carry the burden of proof on that issue: a duty which comprises more than the duty imposed by the presumption."

■ The leading case of United States v. Wells, 1931, 283 U.S. 102, 119, 51 S.Ct. 446, 452, 75 L.Ed. 867, in discussing the phrase "contemplation of death", points out the "necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute." It teaches that the thought of death must be the "impelling" cause of the transfer, although a belief that death is imminent or near at hand is not required. It is possible for a donor, though believing that death is near, to make a gift which is not in contemplation thereof. On the other hand, the gift may be made in contemplation of death though its immediacy is not contemplated or feared. The quest must be for the decedent's impelling motives in making the gifts. United States v. Wells, supra. The inquiry must be whether or not she was "motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective." Milliken v. United States, 1931, 283 U.S. 15, 23, 51 S.Ct. 324, 327, 75 L.Ed. 809.

■ Decedent was a widow, her husband having died on May 31, 1924. His estate was not divided, she being entitled to the usufruct of the entire estate during her life. In 1927 or 1928, however, she gave one daughter $31,000 to buy or build a home, and the other daughter an equal amount in securities. No other substantial gifts were made except those here involved. After her husband's death, however, decedent continued his practice of giving to each daughter monthly allowances. These allowances began at about $50 per month in 1924 and gradually increased to about $250 per month at the time of Mrs. O'Connor's death. They were continued even after the gifts here involved and even until her death. There was a drop off in these amounts during the depression years, and it was decedent's practice, depending on which daughter she was living with, to designate a portion of the allowances as satisfying her obligation to pay room and board.

Mr. Dunbar, decedent's financial adviser, consulted with counsel, and counsel recommended to Mr. Dunbar that decedent make outright gifts of income-producing property, which would completely separate her from the receipt of the income from the properties so transferred. Plaintiffs now contend that it should be inferred that Mr. Dunbar communicated counsel's advice to decedent, and that, therefore, decedent was motivated by that advice and by her desire to avoid income taxes rather than estate taxes.

A look at the financial affairs of decedent and of plaintiffs indicates, however, that estate tax consciousness was

more probable than income tax consciousness. A comparison of income and income tax among the three for 1951 reveals this:

|  | Donor<br>Mrs. O'Connor | Donee<br>Mrs. Butterworth | Donee<br>Mrs. Agnew |
|---|---|---|---|
| Adjusted Gross Income | $15,437.58 | $13,104.17 | $10,142.78 |
| Income Subject to Tax | 11,456.40 | 11,504.17 | 7,942.78 |
| Income Tax | 3,264.00 | 3,282.63 | 1,699.20 |

In making this comparison it should be noted that during the year 1951, Mrs. O'Connor was supporting her sister Cecelia; Mrs. Butterworth had no dependents; and Mr. and Mrs. Agnew had no dependents. It results, therefore, that as between the decedent and Mrs. Butterworth there would be little difference in their tax whether the normal dividends of $412 on the 103 shares of stock in question were reported on the return of the decedent or the donee, Mrs. Butterworth. As between the decedent and Mrs. Agnew the income tax on the dividend to the decedent would have been approximately $160 and to Mrs. Agnew, approximately $108, a difference of approximately $50. It would seem that the income tax consequences of the gift were so negligible that it cannot be reasonably inferred that such was the reason for the making of the gifts. Plaintiffs argue that the dominant motive was income tax savings which to the decedent in this case would not be more than $500 per year. This figure is reached if it is assumed that the $33,000 transferred would produce $1,000 income per year and the $1,000 was taxed at the high rate of 50%. To achieve a saving of $5,000 in income taxes decedent would have had to live 10 years. This court is inclined to the view that a certain and, in a sense, immediate saving of $10,000 in estate taxes was likely to loom larger in the thinking of the decedent.

Decedent's daughters were not in need at the time of these transfers; Mrs. Butterworth's net worth was approximately $300,000, and Mrs. Agnew's, approximately $80,000. At the time of decedent's death her gross estate consisted of properties having fair values in the aggregate of $208,883.19.

While age alone is by no means controlling, it is a relevant and pertinent factor and one of the circumstances to be scrutinized. Burns v. Commissioner, 5 Cir., 1949, 177 F.2d 739, 741; McClure v. Commissioner, 5 Cir., 1932, 56 F.2d 548, 549. Decedent was 82 years of age at the time of these transfers and lived to be 83 years, 1 month and 2 days old. While she was a member of a comparatively long-lived family, she had already outlived most of her near relatives. A brother had lived to be 77; a sister, who was 76 at decedent's death, lived to be 82; another sister lived to be 83; another, 69½. An aunt lived to be almost 90, and a great aunt, 90 or 91. Her mother died at 65, and her father, at 69. Thus, at the date of these gifts, decedent, then 82, had outlived one brother, one sister, and both parents. One sister, then living and 76 years of age, was to reach decedent's then age of 82; another sister had died at 83, one year older than decedent was at the time of these transfers. Decedent's then age of 82 had been appreciably surpassed only by one aunt and one great aunt.

Turning now to the state of decedent's health at the time of these gifts, we find conditions not indicative of further longevity. She was hospitalized from January 30, 1944, until October 12, 1944, with a final diagnosis of hypertensive cardio-vascular disease and rheumatoid arthritis. She stated at that time that she had had hypertension since 1940. She was hospitalized again from January 28, 1950, until February 4, 1950, with final diagnosis of arteriosclerotic

heart disease, osteoarthritis and senile emphysema. She was hospitalized again from July 27, 1952, until her death on September 5, 1952. The primary cause of death was cerebro vascular accident, thrombosis, duration one month and nine days, with secondary cause being arterial hypertension of 15 years duration; and the final diagnosis was "hypertensive cardiovascular disease thrombosis of cerebral artery secondary to arterio sclerosis." In 1950 she had hardening of the arteries of the heart and the same condition in the brain. Her 1950 admission to the hospital was mostly for this arteriosclerotic process in the brain. She had passed out as a result of narrowing or closing out of the vessels in the brain. In 1950 she was carried to the hospital because she had passed out, having become unconscious due to head spasms or closing of the vessels of the brain. Then later in 1952 she had the same ailment, which ended in her death. She was definitely mentally cloudy at various times during these periods of hospitalization. She had a hypertensive heart, and the cardiogram findings in 1944 and 1950 reflected its abnormality. She was in failure at one time on the first admission. While her doctor did not recall advising her of her various diseases, he said it would be a natural reaction for him to advise her of her condition, what she should do, what she should avoid, and what she should expect, but that there was not much need to warn her as she was practically inactive when he saw her.

Mrs. Roy, who nursed the decedent for about six years after her release from the hospital in 1944, testified that the decedent, her daughters and Mrs. Roy talked about the decedent's making transfers of her property in order to avoid the taxes that would be owed thereon when she died.

While both plaintiffs testified, neither of them was asked or stated whether the decedent told them why she was making the gifts.

The plaintiffs have failed to carry the burden which the law places upon them to show that the motive that induced these transfers was not of the sort which leads to testamentary disposition. It is my conclusion, therefore, that under the evidence presented the statutory presumption of contemplation of death has not been overcome and that under such presumption the transfers here in issue were made "in contemplation of death" within the meaning of the statute. Accordingly, I hereby find in favor of the defendant.