ESTATE OF MARY AUGUSTA SANTRY, EMIL SEBETIC and MARGARET LOUISE EMMET, Executors, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Santry v. Commissioner
Docket No. 5018-80.
United States Tax Court
T.C. Memo 1982-400; 1982 Tax Ct. Memo LEXIS 343; 44 T.C.M. (CCH) 488; T.C.M. (RIA) 82400; July 19, 1982. Emil Sebetic, for the petitioners. Christopher B. Sterner, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Chief Judge: Respondent determined a deficiency of $18,751.70 in petitioner's Federal estate tax. The sole issue for our determination is whether the transfer of $300,000 in cash and securities by decedent was a *344 transfer in contemplation of death within the meaning of section 2035. [1]
This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated by this reference. Emil Sebetic and Margaret Louise Emmet, co-executors of the Estate of Mary Augusta Santry, resided in New York State at the time the petition in this case was filed. Mary Augusta Santry (decedent) died on February 23, 1977, at the age of 77 from congestive heart failure.From 1971 until her death, decedent resided at the Putnam-Weaver Nursing Home (Nursing Home) in Greenwich, Connecticut. Medical records maintained by physicians and nurses at the Nursing Home show that, during December 1975, decedent was diagnosed as suffering from hypertensive heart disease, arteriosclerotic heart disease, congestive heart failure, acute pulmonary edema, general arteriosclerosis, diverticulosis, and arteriosclerotic cerebral vascular disfunction. Her prognosis was fair *345 and decedent's attending physician did not anticipate that she would be discharged to return home. At this time, it was determined that decedent was not "medically capable of understanding and signing Patient Bill of Rights." In June 1976 and November 1976, decedent's rehabilitation potential was evaluated as poor. On November 15, 1976, decedent's physician observed that she was suffering from interludes of senility. During the period from September 5, 1976, through January 23, 1977, nurses at the Nursing Home noted that decedent was frequently confused and uncooperative. Decedent's will was executed on June 14, 1967. Pursuant thereto, the major portion of decedent's estate was to "pour-over" into Trust No. 1, an inter vivos trust executed that same day. In 1967, Trust No. 1 was funded with stocks, bonds, and a small amount of cash. Decedent was the principal income beneficiary of, and reserved the right to alter, amend, or revoke, the trust. From 1967 through 1977, decedent's immediate family consisted of her daughter, Margaret Louise Emmet, her daughter's husband, Henri W. Emmet, and her two granddaughters, Claudia Emmet (born December 12, 1963) and Diane Emmet (born *346 December 31, 1965). From 1971 through 1976, decedent made cash gifts to family members as follows: Margaret Louise Emmet and
Claudia
Diane
Year
Henri W. Emmet
Emmet
Emmet
1971
* $15,474
1972
9,834
1973
8,953
1974
9,500
1975
6,400
$4,200
$4,200
1976
10,500
3,750
3,750
In addition to these cash gifts, on December 1, 1970, decedent executed an amendment to Trust No. 1. Pursuant thereto, the trust corpus was divided equally into three short-term trusts. Margaret Louis Emmet, Claudia Emmet, and Diane Emmet were each the income beneficiaries of one of these trusts. Each trust was to terminate on the earliest of: December 31, 1980; the death of that trust's income beneficiary; or decedent's death. Decedent's gift tax return for 1970 valued the income interest for each of the three trusts at $37,512. On November 15, 1976, Emil Sebetic, petitioner's lawyer, wrote a letter to decedent describing the effect of the Tax Reform Act of 1976 on gifts made after December 31, 1976. Mr. Sebetic urged decedent to make one large gift before the end of 1976, either outright or in trust, to or *347 for the benefit of her daughter and granddaughters. A gift totaling $300,000, Mr. Sebetic explained, would result in Federal estate tax savings to petitioner's estate of $135,000, which, after taking into account the $71,000 of gift taxes payable on such transfer, would result in overall tax savings of $64,000. In the latter part of November 1976, Mr. Sebetic prepared Trust No. 2 and visited decedent at the Nursing Home to describe the provisions of the trust to her. Mr. Sebetic clarified the income, estate, and gift tax consequences of Trust No. 2. Decedent expressed particular concern that the dispositive provisions of Trust No. 2 be similar to those of Trust No. 1. Mr. Sebetic stated in a stipulated affidavit that he found decedent alert and in general good health and spirits. On November 27, 1976, decedent executed Trust No. 2 to which she transferred property valued at $300,000. [2] The principal beneficiaries of Trust No. 2 were decedent's daughter and two granddaughters.The dispositive provisions of Trust No. 2 were identical to those of Trust No. 1 which took effect upon decedent's death. The decedent retained no power to alter, amend, or revoke Trust No. 2. *348 The question before us is whether the transfer by decedent of assets valued at $300,000 was in contemplation of death so that the property is includable in her gross estate under section 2035. [3] Because the transfer occurred within three years of decedent's death, section 2035(b) establishes a rebuttable presumption that it was so made. The purpose of section 2035 is "to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United States v. Wells,283 U.S. 102, 117 (1931). The resolution of the issue before us turns on whether, in light of all the facts and circumstances, the decedent's dominant motive in making the transfer was the thought of death or a purpose normally associated with life. United States v. Wells,supra;Estate of Honickman v. Commissioner,58 T.C. 132, 135 (1972), affd. without published opinion, 481 F.2d 1399 (3d Cir. 1973). Not only has petitioner failed to carry its burden of persuasion in its attempt to prove that decedent acted to effectuate life-associated motives, but there are many factors which lead us affirmatively to conclude that the *349 transfer in question was in contemplation of death. *350 The conclusion that the establishment of Trust No. 2 was a substitute for a testamentary disposition seems inescapable. Decedent's will, executed in 1967, provided for the bulk of her estate to be administered under the terms of Trust No. 1. The dispositive provisions of Trust No. 2 are identical to those provisions of Trust No. 1 governing the distribution of principal and income upon decedent's death. According to Mr. Sebetic, decedent "expressed particular concern and approval that the provisions of Trust No. 2 be similar to the provisions of Trust No. 1." This factor strongly supports the statutory presumption and respondent's position. See Estate of Honickman v. Commissioner,supra.
Also supportive of respondent's position is the fact that the transfer was implemented in an attempt to reduce decedent's Federal estate tax liability.See Estate of McIntosh v. Commissioner,25 T.C. 794, 804 (1956), affd. 248 F.2d 181 (2d Cir. 1957); Estate of Hill v. Commissioner,23 T.C. 588, 591 (1954), affd. 229 F.2d 237 (2d Cir. 1956). It is uncontroverted that decedent was heavily influenced by her lawyer's *351 explanation of the changes made to the gift and estate taxes by the Tax Reform Act of 1976. Mr. Sebetic told decedent she could save $135,000 in estate taxes by making a gift of $300,000, with a net saving of $64,000 after gift taxes were taken into account. Under the circumstances of this case, we believe the estate tax savings were a dominant factor motivating decedent rather than "merely a gratifying incident of the transfer[]." Compare Estate of Rand v. Commissioner,36 B.T.A. 1160, 1167 (1937). "Such expected reduction of estate taxes bears heavily against any possible life-motivated interpretation." Estate of Himmelstein v. Commissioner,73 T.C. 868, 878 (1980). Petitioner argues that the transfer was not made in contemplation of death because it was made before a deadline date to avoid the adverse effects of a massive change in the structure of the gift and estate tax laws occasioned by the Tax Reform Act of 1976. In effect, petitioner takes the position that the transfer in question would not have been made but for such "massive change" in the law and the prospect of higher gift and estate taxes which the new law established. Assuming *352 for purposes of argument that petitioner's factual position is correct, it does not follow that the normal standards governing gifts in contemplation of death should not be applied. In Estate of McIntosh v. Commissioner,supra, the decedent, who was in good health, released a power of appointment under the impression based upon advice of counsel (albeit mistaken) that such release would avoid the inclusion of a trust in her gross estate mandated by newly enacted provisions of the estate tax. Both this Court and the Court of Appeals apparently saw no reason not to apply the normal standards for determining whether the gift was made in contemplation of death. See 248 F.2d at 184, 25 T.C. 804-806. See also Oliver v. Bell,103 F.2d 760, 763-764 (3d Cir. 1939). [4] Principal among these standards is that, in the absence of a dominant life-associated motive, a transfer motivated by a desire to avoid estate taxes is in contemplation of death. Estate of McIntosh v. Commissioner,supra.The fact that decedent's transfer was made shortly before the effective date of a major revision of the estate and gift taxes is *353 not determinative one way or the other of the issue in this case. See Allen v. Trust Co.,326 U.S. 630 (1946), where the Supreme Court looked to all motives underlying the gift and refused to isolate the avoidance of estate taxes, which would have otherwise resulted from a recent decision of that Court, as the determinative factor.
Decedent's age and health are additional factors indicating that the transfer was in contemplation of death. See Estate of Himmelstein v. Commissioner,73 T.C. at 877. In 1976, decedent was in her mid-seventies; both prior to and at the time of the transfer, decedent *354 required constant nursing care. Despite petitioner's contention to the contrary, the record supports the conclusion that decedent was in poor health in November of 1976. Petitioner argues that decedent's motives in making the transfer were life-associated, i.e., (1) to continue an established pattern of gift giving, (2) to enable her daughter and granddaughters to become financially independent of Henri Emmet, and (3) to save gift and income taxes. The scant evidence supporting petitioner's contentions is insufficient to persuade us that the transfer was not in contemplation of death. Although decedent had a history of making gifts to her daughter and granddaughters, no previous gift approached the size of the transfer at issue. It seems clear to us that the transfer of $300,000 in 1976 was not part of a previous pattern of giving. [5] See Estate of Lowe v. Commissioner,64 T.C. 663, 676 (1975), affd. 555 F.2d 244 (9th Cir. 1977). *355 Mr. Sebetic's affidavit stated that decedent was concerned that her daughter and granddaughters become reasonably self-supporting apart from Henri Emmet's income. We are unconvinced, however, that this was decedent's dominant motive in making the transfer. Were decedent so concerned that her daughter and granddaughters become self-supporting, we do not believe she would have made joint gifts to Margaret Louise and Henri Emmet from 1972 through 1976 totaling in excess of $45,000. Finally, petitioner argues that the transfer was motivated by decedent's desire to save income and gift taxes. We note that Mr. Sebetic's letter to decedent urging the transfer made no mention of the income tax consequences of the gift. Decedent's annual income was approximately $48,000 in 1975 and $56,000 in 1976; slightly over 25 percent of this income was tax-exempt. Thus, the income tax savings were not substantial in comparison with the projected estate tax savings. See Butterworth v. Usry,177 F. Supp. 197, 200 (E.D. La. 1959). Furthermore, over $48,000 of the assets transferred to Trust No. 2 were tax-exempt municipal bonds. If decedent's primary motive was to reduce her income *356 tax liability, we do not believe she would have given away securities which were exempt from taxation. Nor are we convinced that decedent made the transfer in 1976 primarily to avoid increased gift tax rates enacted by Tax Reform Act of 1976. As discussed previously, the $300,000 gift was not in accordance with decedent's established giving pattern and we are unpersuaded that decedent would have made such a large gift in 1976, 1977, or in any later year other than as a substitute for a testamentary disposition. See Estate of Rickenberg v. Commissioner,11 T.C. 1, 10 (1948), revd. and remd. on other grounds, 177 F.2d 114 (9th Cir. 1949). In sum, decedent's transfer, a few months prior to her death, of $300,000 to Trust No. 2 was in contemplation of death. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. This gift was to Margaret Louise Emmet alone.↩
2. Petitioner states that the transfer of assets to Trust No. 2 was completed on December 20, 1976, while respondent asserts that the transfer took place on November 27, 1976. We need not resolve this discrepancy since both parties agree that the transfer took place before January 1, 1977.↩
3. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule -- The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.
(b) Application of General Rule -- If the decedent within the period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's woth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death with the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩
4. We note that Congress, when it enacted the Tax Reform Act of 1976, provided no "safe harbor" period in which taxpayers could make transfers which would be exempt from the section 2035 inquiry as to whether such were made in contemplation of death. In fact, the value of property transferred after January 1, 1977, and within three years of decedent's death is included in decedent's gross estate regardless of whether such transfer was "in contemplation of death." See section 2001(a)(5), (d)(1), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848, 1854.↩
5. In this connection, we note that respondent has not asserted that the cash gifts made by decedent to her daughter's family in 1974, 1975, and 1976 totaling approximately $42,000 were made in contemplation of death, presumably because these smaller gifts were in keeping with her prior pattern of giving.↩