## QUIGLEY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8388.

Circuit Court of Appeals, Seventh Circuit.

June 8, 1944.

Peter D. Quigley and William A. McSwain, both of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., Carlton Fox, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Asst. to the Atty. Gen., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

Commissioner charged petitioner, in determining her income tax liability, against her objection, with a $20,000 item, by her received in 1939. The correctness of this action determines the disposition of this appeal. Taxpayer contends that this sum was not income, but was received in compromise of her claim or right as an *heir* of her father's estate. She therefore contests the deficiency tax assessment for 1939 which Commissioner assessed against her on the theory that the $20,000 represented income, and not inheritance. The Tax Court sustained the Commissioner.

EVANS, Circuit Judge.

*The facts:* The parties stipulated that petitioner's father died in 1917, leaving an estate of approximately two million dollars. She, her mother, and two brothers survived. Had the father died intestate, her share would have been approximately $400,-000. He left a will, however, wherein he created several trusts, spendthrift in nature.

The trust to petitioner was smaller than those which were made for her brothers.

Dissatisfied with the provision she thus received under the will, petitioner threatened to contest the will. Her threat was withdrawn, however, when she and her brothers executed a contract on May 1, 1917, which might be called a settlement or adjustment agreement, wherein they redivided the estate which was left them. By this settlement she surrendered her right to contest the will. In consideration of this agreement by her, the brothers agreed to pay her, from the income of the trusts created for their enjoyment, an amount "sufficient to bring her income from her father's estate to an amount equal to three-fourths of the amount of net income from the said estate thereafter remaining to each of said brothers."

She was to be paid, and every year thereafter from 1917 to 1939, was paid, a sum in addition to that which she received under the will.

This additional sum, or annuity, was to come from the *income* of the trusts created by the will and not from the corpus.

28

In 1939, another agreement was made between petitioner and her brothers. For $20,000 cash in hand, she released them from further payments under the above-mentioned settlement agreement. The present contest is over this $20,000 payment to her in 1939. Was it taxable income? Respondent asserts, and petitioner denies, its income tax character. The U. S. Tax Court held it was taxable income.

It is worthy of note that (1) the annual payments which petitioner received from 1917 to 1939 were properly subject to income tax as income. Petitioner paid the income tax assessed thereon each year. (2) The annuity payments from 1917 to 1939 were at least one step removed from the *inheritance* controversy. (3) The settlement agreement herein differed from the agreement in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, a case relied on by petitioner, in that it lacked (a) incorporation or recognition in the probate decree settling the estate, (b) the annuity payments were not out of the corpus of the estate, as was the situation in the Hoey case, (c) the agreement for annuity payments was the personal obligation of the brothers to pay petitioner an amount equal to three-fourths the share each received. (4) The trust agreements here under consideration were spendthrift in nature.

■ *Non-taxability on theory the $20,000 was exempt because an "inheritance."* Petitioner contends this $20,000 payment was in lieu of her right to contest her father's will. It was so directly related to and descended from her right as an heir, so she argues, as to be non-taxable as income.

The decision in Lyeth v. Hoey, supra, relied on by petitioner, is, of all cases cited, the nearest to being in point. There, the taxpayer's threat to contest a will reached such a stage of proof as to receive the serious attention of the probate court, and *a settlement was effected in that court, and incorporated in that court's decree, whereby a portion of the corpus of the estate* was paid to the contestant. The Supreme Court held such payment was in actuality an inheritance because paid in addition to the amount provided in the will, and was received by virtue of the court's decree, as though the will had been set aside and intestacy prevailed. In short, a part of the actual corpus of the estate descended to the heir.

While we think the case is distinguishable in two respects, to-wit, (a) the settlement was not incorporated in the final decree in the probate court and thereby given judicial affirmation that it was inheritance and (b) the annual payments made pursuant to the settlement were from income and not from the corpus, we find it impossible to escape the conclusion that the $20,000 indirectly came to petitioner as a part of her inheritance.

She was an heir and as such was entitled to a share of her father's estate, provided he did not leave a will which gave her less. Whether the document presented for probate as her father's will was his voluntary and uninfluenced last will and testament, was a question of fact. As his heir she had a legal standing which permitted her to challenge and dispute it. This was what she threatened to do when her brothers compromised.

They agreed to pay her annually a sum in addition to what she received under her testamentary trust. It would have been a stronger case, perhaps, if the final decree of the probate court had incorporated the settlement agreement and divided the estate accordingly. The facts are, however, not reconcilable with any theory other than that she received the moneys provided for in the settlement agreement as an heir who, exercising her right as an heir, forced her brothers, also heirs, to pay her the sums agreed upon.

Our conclusion on this point is that the property petitioner received in 1917, to-wit, the agreement of her brothers to pay her annually a sum realizable from income of their inheritance, was a part of her inheritance. Its value could not be included in her taxable income in 1917 when the agreement was made because it was inheritance. It being a part of her inheritance, the income derived annually therefrom was subject to an income tax. Likewise, if she sold this property or liquidated it for a consideration, as in 1939, she became subject to an income tax provided the amount she received exceeded the fair value of this property when she received it in 1917.

■ *Non-taxability of the $20,000 on the theory that as capital transaction petitioner made no gain or profit.* Assuming for the moment that petitioner secured this money through an agreement which she made

with her brothers, quite independent of her right as an heir, it was, we think, upon the record before us, not subject to income tax. In other words, assuming that it was a capital transaction and that she had a valid claim against her brothers whereby she was to receive annually a sum of money determined by the amount the corpus produced as income, and other conditions, and she surrendered her right to such annuity for the sum of $20,000, the question becomes one of value of the property rights which she surrendered at the time she acquired her right. In other words, at the time she acquired them, were they worth more than $20,000?

The burden of proving the exact value or cost of her capital asset was not on petitioner. All she had to do was to show that the value in 1917 was equal to or greater than the $20,000 she received in 1939. The record before us shows that the petitioner sought to introduce evidence on this question, but the Tax Court refused to receive it. At least it announced its decision and thereby presumably overruled petitioner's motion to adduce additional evidence on this point.

We think such evidence was relevant and necessary to a proper determination of the issue before the court. If petitioner's rights under the annuity agreement executed by her brothers were worth more than $20,000 in 1917, then she made no gain and there was no tax due. In fact, it may be that evidence showing the value of her asserted right, which she surrendered when her brothers executed the 1917 agreement, would bear on the value of the rights she acquired by the 1917 agreement. Before she can be charged with a 1939 gain, the court must know the value of the right in 1917 which she surrendered in 1939. Ordinary present value of an annuity can be ascertained with reasonable certainty. Here, however, there were uncertainties, due to the difference in earnings from which the annuity was paid. Other factors making for uncertainty appear.

However, the fact that difficulty attends such determination and even though a determination to a mathematical certainty is impossible, we think it not impractical to make a finding as to the 1917 value of petitioner's annuity in issue in this case.

The decision of the Tax Court is reversed with directions to proceed in accordance with the views here expressed.