ESTATE OF ROBERT J. CUDDIHY, DECEASED, ARTHUR B. CUDDIHY AND PAUL R. CUDDIHY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65649. Filed September 10, 1959.

*William L. O'Conor, Jr., Esq.,* and *George A. Donohue, Esq.,* for the petitioners.

*Samuel B. Sterrett, Esq.,* for the respondent.

OPINION.

WITHEY, *Judge:* Respondent determined a deficiency in estate tax in the amount of $207,519.93 for the Estate of Robert J. Cuddihy, Deceased.

The issue presented for our decision is the correctness of the respondent's action in determining that the value of one-half of the principal of the Emma F. Cuddihy Trust is includible in the decedent's gross estate under section 811(c)(1)(B) of the Internal Revenue Code of 1939.

All of the facts have been stipulated and are found accordingly.

Robert J. Cuddihy died on December 22, 1952. On March 22, 1954, a Federal estate tax return for the estate of Robert J. Cuddihy was filed with the director of internal revenue for the Upper Manhattan district of New York.

On May 20, 1926, the decedent created an inter vivos trust and transferred thereto 25,010 shares of the capital stock of Funk & Wagnalls Company, with the provision that one-half of the income was to be paid to his wife for life and the other half was to be paid to his issue per stirpes. Upon termination the remainder was to be paid to the decedent's surviving issue per stirpes. The trust was to continue

until the death of two designated grandchildren of the decedent. However, the trust was terminable in favor of the decedent's issue by the trustees with the consent of a majority in interest of the income beneficiaries. The wife and the three sons of Robert J. Cuddihy were appointed trustees.

On May 20, 1926, Emma F. Cuddihy, wife of the decedent, created a similar trust to which she transferred 24,528 shares of Funk & Wagnalls Company stock. The provisions of this trust were practically identical with those of the trust created by Robert J. Cuddihy, for the decedent was to receive one-half of the income during his life and the other half was to be paid to his issue per stirpes, with the remainder also transferable to the children. This trust likewise was terminable in favor of the issue of the decedent by the consent of a majority of the income beneficiaries. Each trust was created in consideration of the other.

Robert J. Cuddihy and his wife had seven children living at the time of the creation of the trusts and at the time of the death of the decedent.

On November 24, 1941, the decedent and his wife each resigned as trustee. Emma F. Cuddihy died on June 2, 1944.

In an instrument executed May 15, 1946, the decedent released his right to consent to the termination of the Emma F. Cuddihy Trust.

On February 7, 1949, the decedent waived any possible interest, reversionary or otherwise, which he might possibly have in the corpus of either trust and specifically assigned any such interest to a charitable organization.

On April 8, 1949, Robert J. Cuddihy by instrument released his right to receive income from the Emma F. Cuddihy Trust and specifically released any and all rights which he might then possess under that trust in consideration of the receipt of $49,000, $7,000 of which was paid to him by each of his seven children. The cash consideration in the amount of $49,000 received by the decedent represented approximately the commuted value of his right to one-half the income from the Emma F. Cuddihy Trust, based upon his age on April 8, 1949, and computed in accordance with the valuation table contained in the respondent's estate tax regulations.

Robert J. Cuddihy received no further distribution of income from the trustees of the Emma F. Cuddihy Trust after April 8, 1949, and from that date until his death all of the trust income was distributed equally to his children.

The value of the capital stock of Funk & Wagnalls Company on December 22, 1952, was $40 per share.

The respondent has taken the position that the value of one-half of the corpus of the Emma F. Cuddihy Trust is includible in the

gross estate of Robert J. Cuddihy under section 811(c)(1)(B) of the Internal Revenue Code of 1939,[1] because the decedent had retained for his life the possession or enjoyment of, or the right to one-half of the income from, the trust property.

The petitioner does not deny that the decedent is to be regarded as the settlor of the Emma F. Cuddihy Trust under such decisions as *Lehman* v. *Commissioner*, 109 F. 2d 99, affirming 39 B.T.A. 17, certiorari denied 310 U.S. 637; *Oliver* v. *Commissioner*, 148 F. 2d 210, affirming per curiam a Memorandum Opinion of this Court, and *Hill's Estate* v. *Commissioner*, 229 F. 2d 237, affirming 23 T.C. 588, which hold that where one person creates a trust for another in consideration of the creation by the other of a similar trust for him, the nominal beneficiary who furnished the consideration for the creation of the trust is the settlor of that trust. The petitioner contends however (1) that since the Emma F. Cuddihy Trust was created prior to March 4, 1931, it is specifically excluded from the operation of section 811(c)(1)(B) by the last sentence of section 811(c), and (2), in any event, section 811(c)(1)(B) is not applicable because prior to his death the decedent had relinquished all rights in the trust, including any rights to income and possession or enjoyment of the property.

The last sentence of section 811(c) provides that "[s]ubparagraph (B) shall not apply to a transfer made before March 4, 1931." This provision on its face appears clearly to exclude from the operation of section 811(c)(1)(B) a transfer in trust made on May 20, 1926. The respondent maintains, however, that "a transfer" in trust cannot be "made" before March 4, 1931, where, as here, the trust was terminable with the grantor's consent. The respondent asserts that "a transfer" within the meaning of the last sentence of section 811(c)

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \* \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

\* \* \* \* \* \* \*

Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

did not take place until May 15, 1946, when the decedent by instrument released his right to join in the termination of the trust. The respondent has here advanced an elaborate argument based upon the legislative and judicial history of section 811(c) (1).

Tracing his argument briefly, the respondent first points to the decision of the Supreme Court in *May* v. *Heiner*, 281 U.S. 238, in which it was held under the Revenue Act of 1918, requiring the inclusion in a decedent's gross estate of any property transferred during his lifetime "intended to take effect in possession or enjoyment at or after his death," that an irrevocable transfer in trust under which the decedent-settlor had retained a life interest was not includible in his estate. In March 1931 Congress passed a joint resolution (46 Stat. 1516) amending the estate tax provisions by prospectively providing that a transfer of property subject to a life interest reserved in the transferor is includible in his gross estate. Transactions involving transfers of property occurring prior to 1931, of course, were governed by the holding of the Supreme Court in *May* v. *Heiner*, *supra*. In 1949, however, the Supreme Court in *Commissioner* v. *Church*, 335 U.S. 632, overruled its previous holding in *May* v. *Heiner*, *supra*, with the result that pre-1931 transactions involving a transfer of property subject to a life interest were made subject to inclusion in the gross estate. Congress, in the Technical Changes Act of 1949, thereupon added the last sentence of section 811(c) of the 1939 Code, which provided that section 811(c) (1) (B) should not apply to "a transfer made prior to March 4, 1931." The congressional purpose underlying the enactment of the exemption contained in the last sentence of section 811(c) was the protection of decedents who had relied upon the decision of the Supreme Court in *May* v. *Heiner*, *supra*, with respect to pre-1931 transactions. S. Rept. No. 831, 81st Cong., 1st Sess., 1949-2 C.B. (Part 2) 289, 293. The respondent accordingly contends that the exemption provided by the last sentence of section 811(c) is inapplicable to any transfer of property other than one which is identical to that involved in *May* v. *Heiner*, *supra*, and, therefore, a transaction, to be eligible under that exemption, must not be revocable or terminable by the transferor.

In support of his position, the respondent relies upon the decision of the United States Court of Claims in *Smith* v. *United States*, 139 F. Supp. 305. The transaction there involved was a trust created in 1923 under which the decedent reserved the right to income for life. The decedent's husband, one of two trustees, was given power in his sole discretion to modify or revoke the trust. Further, the settlor, jointly with her husband, could modify, terminate, or revoke the trust. The Court of Claims, in a three to two decision, held that

the last sentence of section 811 (c), exempting "a transfer made prior to March 4, 1931," refers only to an *irrevocable* transfer in trust, and that since the decedent needed only to obtain the consent of her husband (who had no adverse interest) in order to revoke the trust and recover the property, the transaction was not "a transfer" within the meaning of the exemption provided in section 811(c). In so holding, the majority opinion relied in part upon several gift tax cases which hold that a transfer of property is incomplete for purposes of creating a taxable gift if the transferor retained a power of revocation over the property. *Burnet* v. *Guggenheim,* 288 U.S. 280; *Estate of Sanford* v. *Commissioner,* 308 U.S. 39; *Means* v. *United States,* 39 F. 2d 748.

In our opinion, the transaction involved in *Smith* v. *United States, supra,* is factually distinguishable from the one here presented. The trust created by the decedent in the *Smith* case was revocable in favor of the settlor by her joint action with her husband, whereas the transfer here was completely irrevocable. Only with the consent of at least four of the children of the decedent could a termination of the trust be accomplished, and then only in favor of the decedent's children. The decedent possessed no right or power after the creation of the trust in 1926 by which he might recover the property.

Moreover, the court's reliance in the *Smith* case upon the gift tax decision cited above as bearing on the meaning of the word "transfer" as used in section 811(c) is we think inapposite. A transaction held to constitute a transfer for estate tax purposes is not necessarily to be regarded as a transfer under the gift tax provisions. *Smith* v. *Shaughnessy,* 318 U.S. 176. The reason for a variation in treatment of the same transaction under two different provisions of the Internal Revenue Code is that only a completed transfer of the beneficial interest can support the imposition of a gift tax, whereas the estate tax attaches to whatever interest in transferred property is retained by the decedent at the time of his death.

Consequently, we do not consider the decision of the Court of Claims in *Smith* v. *United States, supra,* controlling in the resolution of the issue here presented.

The respondent's reliance upon the legislative history of section 811(c)(1) is not persuasive because the wording of the statute, which speaks simply of "a transfer made before March 4, 1931," is plain and unambiguous. *Crooks* v. *Harrelson,* 282 U.S. 55; *Alexander C. Yarnall,* 9 T.C. 616, affd. 170 F. 2d 272. Taken in its normal sense, the application of the statutory phrase in question to a transfer in trust appears to refer to the time of the transfer of title to the trustee, rather than to some subsequent time when a retained right or power is released. The exemption section neither mentions nor implies the

nonexistence of a right to terminate as requisite to an exempt transfer, and we see no reason to read into it an exception not stated or implied.

We are supported in our view of the meaning to be placed on the words "a transfer made before March 4, 1931," by the fact that it is consistent with the statutory usage of the word "transfer" in section 811. Section 811(d), for example, imposes an estate tax on a "transfer" that is revocable by the decedent. Section 811(c)(1)(B) taxes a "transfer" under which the decedent has retained possession, enjoyment, or the right to income from the transferred property. Section 811(c)(1)(C) taxes a "transfer" intended to take effect in possession or enjoyment at or after his death. It is, therefore, apparent that the word "transfer," as used in section 811, does not necessarily refer to an absolute or completed transfer of the entire beneficial interest in the conveyed property. Identical words used in different parts of the same statute must be construed to mean the same thing unless a contrary meaning is clearly shown. *United States* v. *Olympic Radio & Television*, 349 U.S. 232; *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84.

For the foregoing reasons, we are of the opinion that the transfer to which the last sentence of section 811(c) refers is the transfer of legal title to a trustee upon the creation of a trust prior to March 4, 1931. A transfer in trust under which a settlor retains a right to join in a termination solely in favor of his children clearly falls within the terms of that exemption. We accordingly hold that the transaction here involved, which occurred on May 20, 1926, is excluded from the operation of section 811(c)(1)(B).

Even if the decedent's transfer in trust were not exempt from the operation of section 811(c)(1)(B), we are of the opinion that this transaction does not fall within the scope of section 811(c)(1)(B), as respondent contends. The respondent has taken the position that the decedent retained for his life the right to one-half of the income arising from the Emma F. Cuddihy Trust. He contends that by the execution of the instrument dated April 8, 1949, the decedent in effect gave up nothing and has simply accelerated the receipt of income. The respondent states on brief that "[i]n relation to the trust principal there is not one iota of difference between receiving the income annually or its commuted value in one lump sum."

Although the transaction which occurred on April 8, 1949, was between a father and his children and between a beneficiary and trust fiduciaries, and therefore requires close scrutiny, we nevertheless are convinced from the record herein that the decedent's intention was to divest himself completely of his equitable interest in the trust, and that by the execution of the instrument on that date, he effectively transferred his rights to income and his interest in the principal of

the trust to the other income beneficiaries, who were also remaindermen.

The instrument executed on April 8, 1949, on its face completely released and discharged the trustees from any further obligation or liability thereunder with respect to decedent's interest. The trustees themselves were parties to the transaction. The trustees remained obligated after the execution of the release of April 8, 1949, to continue to pay out the income to the other income beneficiaries as it arose. Consequently, the assertion that the income was paid out in advance is not supported by the record. Further, the decedent, upon executing the foregoing instrument, no longer remained in the same economic or legal position as before. He was no longer entitled to look to the trustees for a share of the trust income, for by the relinquishment of his equitable interest he severed the remaining tie which bound him to the trust. The decedent no longer was a beneficiary but was merely the possessor of cash in the amount of $49,000. He no longer had the economic security which would have been afforded by the continuing payment to him of one-half of the trust income.

In several income tax decisions the courts have held that the transfer by the life beneficiary of his interest in trust property, either to a remainderman or to an outsider, represents the transfer of a capital asset and the consideration accordingly is to be treated as the proceeds from the sale of a capital asset. *Bell's Estate* v. *Commissioner*, 137 F. 2d 454, reversing 46 B.T.A. 484; *McAllister* v. *Commissioner*, 157 F. 2d 235, reversing 5 T.C. 714, certiorari denied 330 U.S. 826; *Allen* v. *First Nat. Bank & Trust Co. in Macon*, 157 F. 2d 592, certiorari denied 330 U.S. 828; *Quigley* v. *Commissioner*, 143 F. 2d 27; *Sayers F. Harman*, 4 T.C. 335; *Gladys Cheesman Evans*, 30 T.C. 798. Although these decisions arose as income tax cases, they clearly establish the point that the consideration received by the life beneficiaries did not represent an accelerated payment of future income, and the transferors did not thereafter retain a right to receive trust income.

The decedent, therefore, relinquished his rights under the Emma F. Cuddihy Trust on April 8, 1949, and it cannot be realistically contended that he "retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death * * * the possession or enjoyment of, or the right to the income from, the property" within the meaning of section 811 (c) (1) (B) of the 1939 Code.

Thus, even if the transfer were not exempt from the operation of section 811 (c) (1) (B), it nevertheless would not fall within the meaning of that section.

*Decision will be entered for the petitioners.*