ESTATE OF J. BRITTON STUBBLEFIELD, DECEASED, RICHARD B. STUBBLEFIELD and RUBY HARPER, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Stubblefield v. Commissioner
Docket No. 3397-77.
United States Tax Court
T.C. Memo 1981-353; 1981 Tax Ct. Memo LEXIS 397; 42 T.C.M. (CCH) 342; T.C.M. (RIA) 81353; July 6, 1981
*397 In 1955 decedent and his wife conveyed two farms, one each, to their son and daughter. For the next 18 years, however, decedent used the farms for his crops and livestock without formal reservation or agreement. Although the children held legal title to the land and exercised some rights in the land, they did not interfere with decedent's use of the property. During the last 5 of the 18 years decedent paid rent to his children for the use of the farms. Decedent surrendered completely any and all interest in the farms no later than May 1973, the same month in which he conveyed to his children 300 head of cattle which he had kept on the farms. Ten months later, he died at age 95. In 1950 decedent built a house on his daughter's land and resided in that house with his wife until his death. Decedent was not reimbursed by his daughter for the cost of constructing the house. Held, the farms are not includable in decedent's estate under an independent application of section 2036, I.R.C. 1954; heldfurther, petitioner was prejudicially surprised by respondent's late argument involving the combined operation of sections 2035 and 2036, I.R.C. 1954, with respect to the farms; therefore, *398 the issue will not be decided; heldfurthr, the gift of the cattle was made in contemplation of death under section 2035; heldfurther, decedent's residence on his daughter's land is includable in his estate under section 2036. Quentin L. Housholder and Alan C. Housholder, for the petitioner. Wesley J. Lynes, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency of $ 308,924.98 in the Federal estate tax of the estate of J. Britton Stubblefield. After concessions by both parties, [1] the issues for our decision are: (1) Whether the value of two farms transferred by J. Britton Stubblefield to his children in 1955 is includable in his estate under section 2036; [2] *399 (2) Whether petitioner was prejudicially surprised by respondent's attempt to include the farms in decedent's estate by way of a tandem application of sections 2036 and 2035, when such argument was raised for the first time on opening brief; (3) If the farms are required to be included in decedent's estate under either or both of these provisions, what was the value of the larger farm at the date of death of decedent; [3]
(4) Whether a gift of 300 cattle by decedent to his children was in contemplation of death and therefore includable in his estate under section 2035; and (5) Whether the value of a house built by decedent in 1950 on land owned by his daughter and her husband is includable in his estate under section 2036. FINDINGS OF FACT J. Britton Stubblefield (hereafter decedent) died on March 5, 1974, a legal resident of Hartsville, Trousdale County, Tennessee, at age 95. Both Richard *400 B. Stubblefield, decedent's son (hereafter Richard), and Ruby Harper, decedent's daughter (hereafter Ruby), co-executors of decedent's estate, were legal residents of Hartsville when the Federal estate tax return was filed for petitioner. The return was filed with the Internal Revenue Service Center in Memphis, Tennessee. Decedent's last will and testament was executed on September 28, 1955, less than four weeks after he suffered a heart attack (myocardial infarction) on September 3, 1955, at age 77. From that date until October 1973, decedent suffered no further attacks. He was, however, diagnosed as having arteriosclerotic heart disease with angina pectoris, or, in layman's terms, hardening of the arteries accompanied by chest pains, on August 31, 1961. Twelve years later, in October 1973, at age 95, decedent suffered another heart attack (coronary thrombosis). Because of this attack, decedent was treated and attended by Dr. E. K. Bratton for the first time. After the second attack, decedent's physical activities, already restricted somewhat by his age and physical abilities, were restricted further by Dr. Bratton. Decedent soon regained most of his physical abilities and *401 activity. Dr. Bratton later described decedent's ailment at that time as progressive and incurable, but noted that, prior to February 1974, decedent's symptoms were not severe enough to make decedent aware of the gravity of his condition. Until February 1974, the time of decedent's last illness, decedent's mental condition remained good, even though his physical activities had been limited. From February to March 1974 decedent's mental and physical condition worsened. He died of an attack of anterior myocardial infarction on March 5, 1974. On January 15, 1955, decedent and his wife, Agnes, conveyed two farms, one of 550 acres (hereafter Halltown farm) to Richard and one of 491 acres (hereafter River farm) to Ruby. Both of these transfers were reported on a gift tax return filed by decedent for the taxable year 1955. Decedent continued to use these farms for his livestock and crops, however, from January 1955 to May 1973. Although no written agreement existed concerning decedent's continued use of the two farms, decedent did deduct as rent for the farms certain payments made one-half each to Richard and Ruby from 1968 to 1972, as follows: Year
Rent
1968
$ 10,000
1969
10,000
1970
12,000
1971
10,000
1972
10,000
No *402 payments were made before 1968. These rentals compared favorably with rent paid by other farmers for similar acreage in the surrounding locality. During his use of the two farms decedent deducted taxes and insurance payments relating to the farms, farm buildings and farm equipment, and, at least from 1968 to 1972, he also deducted depreciation on the farm buildings, a well and some fences. Until 1973 decedent was shown on Department of Agriculture records as owner and operator of the single tobacco allotment of 30,000 pounds assigned between the two farms.Rental value of the allotment was approximately $ 7,500 during the years in question. Operation of the tobacco allotment, that is, raising and selling of the tobacco quota, was in the name of the decedent until July 6, 1973, when it was changed to Richard and Cecil (Ruby's husband). Ownership of the allotment, synonymous on the records with land ownership, was listed in decedent's name until it was divided between Richard and Cecil in January 1974. While decedent was using the Halltown farm, a tenant house on the property was destroyed by fire. The structure was rebuilt to Richard's specifications and at his expense in 1972. *403 Later that year Richard was reimbursed by decedent for the construction expenses, which amounted to $ 8,351.26. In 1968, Richard sold 30 acres of the Halltown farm, without decedent's permission, and executed a warranty deed for the conveyance. Prior to 1973 Richard made repairs to buildings and fences on the Halltown farm and used the Halltown farm for grazing some of his cattle and pigs. Further, from 1968 to 1973 Richard tended all of decedent's cattle on the Halltown farm, as decedent lost interest in farming. After May 1973 decedent completely ceased working the crops and livestock on the Halltown farm and no longer received any income from the property. In 1968, Ruby and Cecil sold timber from the River farm. Some of the proceeds from the sale were reinvested in the River farm. All other income from the River farm was received by the decedent until May 1973. Approximately two years prior to that time, Cecil took over the operation of the River farm for decedent's benefit, because decedent began to lose interest in the farm. Decedent returned to the River farm only once or twice in those years before his death. After May 1973 all income from the farm was received by Ruby *404 and Cecil. The value of the River farm at decedent's death was $ 172,400.
On May 14, 1973, decedent transferred his 300 head of cattle, 150 head each, to Richard and Ruby. The 300 head of cattle had a fair market value of $ 60,000 at the date of decedent's death. The transfers of the cattle were made in contemplation of death. During 1950, decedent had a house built, at his expense, on land owned by Ruby and Cecil. Prior to construction a house on the lot had to be torn down. Decedent used some of the salvaged materials to build other buildings on land that he owned in another part of the town. In 1951, decedent and his wife, Agnes, moved into the new house on the land of Ruby and Cecil and lived there until decedent's death and Agnes' subsequent move to a nursing home. At no time did decedent or Agnes pay rent to Ruby and Cecil for the house or the land on which it was situated. Decedent was not reimbursed by Ruby and Cecil for the new house, the value of which was $ 25,000 at decedent's death. OPINION The first issue for our decision is whether the value of the Halltown and River farms must be included in decedent's gross estate. In his statutory notice of deficiency respondent *405 specified section 2036[4] as the sole basis for inclusion of these properties, as follows: (a) It is determined that the value of 550 acres of farm property [the Halltown farm], deeded by decedent on January 15, 1955, to his son, Richard B. Stubblefield, is includable in the decedent's gross estate under the provisions of section 2036 of the Internal Revenue Code, since the decedent retained the possession, *406 enjoyment of, and the right to the income from the property during his lifetime. It is further determined that the fair market value of the 550 acres of property was $ 467,500.00, or $ 850.00 per acre, at date of death on March 5, 1974. (b) It is also determined that the value of 491 acres of farm property [the River farm], deeded by decedent on January 15, 1955, to his daughter, Ruby S. Harper, is includable in the decedent's gross estate under the provisions of section 2036 of the Internal Revenue Code, since the decedent retained the possession, enjoyment of, and the right to the income from the property during his lifetime. It is further determined that the fair market value of the 491 acres of property was $ 341,245.00, or $ 695.00 per acre, at date of death on March 5, 1974. Neither the pleadings nor respondent's opening statement at trial gave any indication that anything other than section 2036 was applicable with respect to the farms. On opening brief, however, respondent conceded that a literal application of section 2036 would not trigger inclusion of the farms in decedent's gross estate because decedent did not retain a possessory or income interest therein "for his life *407 or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death," as required by section 2036(a). Having realized the legal insufficiency of his argument, respondent then sought to include the farms in decedent's gross estate by way of a tandem application of sections 2036(a) and 2035. [5] *408 *409 Under this approach respondent contends that decedent relinquished his interest in the properties in contemplation of death under section 2035, and that the value of the interest required to be included in the gross estate is not the value of the life interest (which would have been zero at the date of death), but rather the amount which would have been included had the requirements of section 2036(a) been satisfied, i.e., the full fair market value of the properties. On reply brief petitioner strongly objected to the injection of the section 2035 issue at that stage of the proceedings, claiming that respondent's tardy presentation of a distinctly different ground for inclusion had severely prejudiced its ability to prepare an adequate response. Accordingly, petitioner asks that we disregard the section 2035 argument and confine our decision to those issues which were properly raised in the notice of deficiency and the pleadings herein. Respondent, on the other hand, insists that the section 2035 issue is properly before this Court because it was "obvious" from the evidence presented at trial that he intended to rely on such argument, and that petitioner should have prepared its case accordingly. Further, respondent maintains that he is not required to specifically plead an alternative reason for an adjustment contained in the notice of deficiency in order for this Court to consider the matter. We agree with petitioner and decline to decide this issue. This Court ordinarily will not decide issues which are different from or inconsistent with the statutory notice of deficiency unless they *410 are raised in the pleadings or by an amendment to the pleadings. Fox Chevrolet, Inc. v. Commissioner, 76 T.C.     (May 11, 1981) (pp. 39-45 of the slip opinion); Estate of Goldsborough v. Commissioner, 70 T.C. 1077, 1085-1086 (1978), on appeal (4th Cir., Oct 22, 1980); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Estate of Horvath v. Commissioner, 59 T.C. 551, 556 (1973); McSpadden v. Commissioner, 50 T.C. 478, 493 (1968); Sorin v. Commissioner, 29 T.C. 959, 969 (1958), affd. per curiam 271 F. 2d 741 (2d Cir. 1959); Tauber v. Commissioner, 24 T.C. 179, 185 (1955). This rule is intended to insure that the taxpayer is fully and fairly apprised of the basis for the adjustments contained in the notice of deficiency, thereby affording him an adequate opportunity to prepare for trial on such issues. Where the Commissioner attempts to raise a new issue for the first time on brief, and the failure to do so before trial prevents the taxpayer from introducing evidence concerning the new issue, notions of fundamental fairness dictate that the issue be disregarded in order to avoid prejudice to the taxpayer's case. See Fox Chevrolet, Inc. v. Commissioner, supra; Commissioner v. Transport Mfg. & Equipment Co., 478 F. 2d 731, 736 (8th Cir. 1973); *411 Estate of Horvath v. Commissioner, supra at 555-556; Riss v. Commissioner, 56 T.C. 388, 401 (1971), supplemental opinion 57 T.C. 469 (1971), affd. on other issues 478 F. 2d 1160 (8th Cir. 1973); Theatre Concessions, Inc. v. Commissioner, 29 T.C. 754, 760-761 (1958). It is true, as respondent points out, that under appropriate circumstances an adjustment contained in the notice of deficiency may be sustained for reasons other than those set forth in the notice or raised in the pleadings. Where the alternative reason presents a purely legal issue requiring no additional fact finding, this Court, in the past, has sometimes decided the matter, even though it was not raised until briefs were filed. See, e.g., Ralph Gano Miller Corp. v. Commissioner, 76 T.C.     (March 17, 1981) (p. 7 of the slip opinion); Southern Pacific Transportation Co. v. Commissioner, 75 T.C. 497, 805 (1980). On other occasions this Court has decided an issue not presented in the statutory notice or the pleadings where the taxpayer received sufficient advance notification to justify the conclusion that he was not harmed in his ability to prepare for trial. See, e.g., Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 593-594 (1976), *412 affd. without published opinion 562 F. 2d 39 (2d Cir. 1977); Rubin v. Commissioner, 56 T.C. 1155, 1163-1164 (1971), affd. 460 F. 2d 1216 (2d Cir. 1972). In our view neither of these exceptions applies in the present case. It is clear that respondent has argued for the first time on brief a ground for the inclusion of the farms which is radically different from that relied on in the notice of deficiency. The statutory notice presented section 2036 as the only basis for inclusion. However, as previously indicated, the evidence adduced at trial clearly showed that decedent had relinquished any and all interests in the farms prior to his death, thereby rendering section 2036 inapplicable on its own terms. Having conceded this point on brief, respondent now contends that (1) following the transfer of legal title to the farms to Richard and Ruby in 1955 decedent retained an implied life estate in the properties; (2) decedent surrendered these retained life estates within three years of his death; (3) such transfers were made in contemplation of death under section 2035(a); and (4) as a result, the full value of the farms, rather than the value of the life estates, should be included in *413 decedent's gross estate in order to achieve the same measure of inclusion which would have resulted if section 2036 had applied to the properties. On its face, section 2035 would not appear to call for such a result. A literal interpretation of the statute would seem to require inclusion only of the value of the actual interest transferred within three years of death, provided the requisite death motive is found to be present. Thus, in the present case the amount to be included under section 2035 is arguably limited to the value of the life estates which decedent allegedly retained following the gift of the farms in 1955. For purposes of this section the transferred interests are to be valued at the date of death or on the alternate valuation date. See sections 2031 and 2032; see also section 20.2035-1(e), Estate Tax Regs. Recognizing that the value of the life estates would be zero as of the date of death, respondent contends that the transfers of the retained interests within three years of death should trigger inclusion of the fullvalue of the farms under the combined operation of sections 2035 and 2036. Respondent's argument is not without legal precedent. In United States v. Allen, 293 F. 2d 916 (10th Cir. 1961), *414 cert. denied 368 U.S. 944 (1961), the decedent had created an irrevocable trust and reserved a life income interest in three-fifths of the trust corpus. Within three years of her death she sold her life estate to her son for slightly more than the actuarial fair value of the interest. The trial court determined that this transfer was made in contemplation of death under the predecessor statute to section 2035, but held that no inclusion was required since the transfer was for full consideration. On appeal the Tenth Circuit held that the proper inclusion was the amount which would have been included if the life estate had not been sold, i.e., the value of three-fifths of the trust corpus as required under the predecessor to section 2036, less an offset for the amount of the consideration received on the sale of the life estate. The Court reasoned as follows (293 F. 2d at 918): It does not seem plausible, however, that Congress intended to allow such an easy avoidance of the taxable incidence befalling reserved life estates. This result would allow a taxpayer to reap the benefits of property for his lifetime and, in contemplation of death, sell only the interest entitling him to the *415 income, thereby removing all of the property which he has enjoyed from his gross estate. Giving the statute a reasonable interpretation, we cannot believe this to be its intendment. It seems certain that in a situation like this, Congress meant the estate to include the corpus of the trust or, in its stead, an amount equal in value.* * * The Allen rationale is also embodied in section 20.2035-1(b), Estate Tax Regs., which provides as follows: (b) Application of other sections. If a decedent transfers an interest in property or relinquishes a power in contemplation of death, the decedent's gross estate includes the property subject to the interest or power to the extent that it would be included under section 2036, 2037, or 2038 if the decedent had retained the interest or power until his death. If a decedent exercises or releases a general power of appointment in contemplation of death, the property subject to the power is included in the decedent's gross estate to the extent provided in section 2041 and the regulations thereunder. See also Rev. Rul. 56-324, 1956-2 C.B. 999; Rev. Rul. 79-62, 1979-1 C.B. 295. Although seemingly at odds with the literal language of section 2035, *416 the result reached in Allen has been viewed with approval by most commentators. [6] Without it, they reason, the purpose of section 2036 could be easily frustrated by deathbed transfers of retained life estates. [7] *418 At the same time, however, a persuasive argument can be made that a lifetime relinquishment of the retained interest which is not made in contemplation of death should disengage section 2036 altogether. See Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, par. 4.08 [8][b] (4th ed.). See also Estate of Cuddihy v. Commissioner, 32 T.C. 1171 (1959) (relinquishment of life estate disengaged the forerunner of section 2036). Cf. United States v. Heasty, 370 F. 2d 525 (10th Cir. 1966) (where decedent and his wife conveyed jointly held property originally acquired with the decedent's funds to their children while retaining joint life estates therein with rights of survivorship, and following the death of his wife decedent was in possession of the entire property, the amount required to be included in his estate under section 2036 was limited to the value of the one-half interest he had conveyed to the children, rather than the amount which would have been included *417 under section 2040 (i.e., the full value of the property); Allen distinguished in part because the transfer to the children was not made in contemplation of death). As the foregoing discussion indicates, the argument respondent has belatedly *419 advanced on brief is based on an entirely different legal ground than that posited in the statutory notice of deficiency and the pleadings. More importantly, however, the ground requires substantially different fact finding than that required under an independent application of section 2036. To elude the grasp of section 2036 petitioner could have argued either of the following: (1) that decedent did not retain any possessory or income interest in the farms following the gift of the properties in 1955, or (2) even assuming such an interest was retained pursuant to an express or implied agreement between the parties, that decedent still did not retain the interest for the prescribed statutory period (i.e., for his life, or for any period not ascertainable without reference to his death, or for any period which does not in fact end before his death). With the injection of section 2035 into the dispute, however, two new issues emerge: (1) whether decedent relinquished the alleged life estate within three years of his death, and (2) if so, whether this transfer was made in contemplation of death. In our judgment the petitioner, for lack of proper warning, did not have a sufficient opportunity *420 to address these lately raised and additional factual issues. Admittedly, petitioner was on notice of the necessity of proving that decedent had, atsomepoint before his death, relinquished whatever interest he had retained in the farms. To this end it was able to produce clear and uncontroverted evidence that decedent had abandoned any and all interest in the farms no later than May, 1973, or approximately 10 months before his death. Thus, knowing that its position was all but impregnable on this score, and being unaware of the potential application of section 2035, petitioner had no real incentive to attempt to prove an earlier relinquishment of the proscribed interest, i.e., one occurring more than three years before decedent's death, which would arguably place the farms beyond the reach of both sections 2035 and 2036. Whatever additional evidence petitioner may have introduced if it had been fully informed of respondent's new ground for inclusion is obviously a matter for speculation. However, as the record now stands there is at least some evidence, apparently introduced by petitioner in an effort to disprove the existence of any retained interest following the gift of the *421 farms in 1955, to suggest that an earlier transfer may be more than a mere theoretical possibility. Beginning in 1968 and continuing through 1972 decedent paid rent ranging from a total of $ 10,000 to $ 12,000 a year for the use of the two farms. This Court has previously indicated that the adequacy of rent paid by the donor is one factor to consider in determining whether he retained an interest in the property sufficient to trigger inclusion under section 2036. See Estate of DuPont v. Commissioner, 63 T.C. 746 (1975); Estate of Barlow v. Commissioner, 55 T.C. 666 (1971). Based on the evidence submitted at trial concerning the fair rental value of similar properties in the surrounding locality, we cannot conclude that the rent paid was necessarily inadequate, at least when viewed on an annual basis. As a result, it could be argued that decedent effectively relinquished any retained interest in the farms in 1968 when the rental payments commenced, thereby placing the transfers beyond the scope of section 2036. We emphasize that we express no opinion on whether the payment of a fair rental under the circumstances presented herein should be treated as a surrender of any previously *422 retained interest otherwise qualifying under section 2036. We have mentioned this matter simply to point out the potential arguments petitioner could have raised, as well as the nature of additional evidence which might have been forthcoming, if the petitioner had received timely notification of the section 2035 issue. Petitioner's case was prejudiced to an even greater degree by the absence of a meaningful opportunity to address the contemplation of death issue. Although petitioner was aware that section 2035 was being argued with respect to the cattle transfers, it had no reason to believe that the same was being argued with respect to the farms. A careful review of the trial transcript fails to disclose even an oblique reference to the contemplation of death issue in this latter context. Moreover, we refuse to equate the opportunity to present evidence on the cattle issue with an opportunity to do so with respect to the farms. Not only was the value of the farms far in excess of the value of the cattle, there is also some doubt in our minds as to whether the transfers of the cattle took place concurrently with the relinquishment of the life estates allegedly retained by decedent. *423 Thus, we cannot say, as a matter of law, that petitioner would not have presented additional evidence concerning decedent's motives in relinquishing the life estates had it known that respondent intended to make an issue of this matter. Our concerns in this regard are best summarized by the following excerpt fromp respondent's own reply brief (Reply Brief p. 16): Other than lay testimony concerning the apparent state of health of J. Britton Stubblefield, petitioner offered no evidence to show that these transfers of the life estates were not in contemplation of death, evidentlybecausethisissuewasnottakenintoconsiderationbypetitioner.
[Emphasis added.] The fact of the matter is that petitioner might have taken this issue into consideration if the statutory notice or the pleadings had mentioned it. The pleadings are, after all, designed to give the parties "fair notice of the matters in controversy and the basis for their respective positions." Rule 31(a), Tax Court Rules of Practice and Procedure. Respondent, for reasons unknown to the Court and to the petitioner, chose to delay presentation of the section 2035 argument until opening briefs were submitted. Because the potential *424 harm to petitioner is, in our view, substantial, we will not reward respondent's dilatory tactics by deciding this issue. Accordingly, since respondent has conceded the inapplicability of section 2036, we hold on this record that the farms are not required to be included in decedent's gross estate. Thus, it is unnecessary for us to determine the value of the Halltown Farm. The next issue for our consideration is whether the transfers of 300 head of cattle by decedent in May 1973 were made in contemplation of death under section 2035 (see note 5, supra), and therefore includable in decedent's gross estate. The purpose of section 2035 is to prevent evasion of Federal estate taxes by taxing lifetime transfers which are essentially substitutes for testamentary dispositions. United States v. Wells, 283 U.S. 102, 116-117 (1931); Estate of Hill v. Commissioner, 64 T.C. 867, 877 (1975). As it existed during the year of decedent's death, section 2035 called for the inclusion in the decedent's gross estate of the value of all property transferred by him within three years of death if the transfer was made in contemplation of death. Section 2035(b) creates a rebuttable presumption that gratuitous *425 transfers within the three-year period prior to death were made with the proscribed death motive. A subjective examination of the donor's dominant motive, in light of his physical and mental condition, is the necessary test. United States v. Wells, supra; Estate of Johnson v. Commissioner, 10 T.C. 680, 688 (1948); see also section 20.2035-1(c), Estate Tax Regs. Petitioner maintains that life motives, rather than death motives, predominated in decedent's decision to give the cattle to his children. In support thereof petitioner contends the following: (1) that decedent wanted to reward his children for helping him with the operation of the farms during the several years preceding the transfers; (2) that he had lost interest in farming, and was no longer physically able to care for the cattle; and (3) that he was in good health on the date of the gifts despite his advanced age (95 years). After a careful review of the record in this case, we think the petitioner has failed to prove that the transfers were not akin to testamentary dispositions.We are aware of the fact that decedent was an active individual with no reason to suspect his health, even though he was 95 years old at the *426 time of the transfers. Further, it is well settled that age alone is not a conclusive factor in finding that a transfer was made in contemplation of death. See, e.g., Kniskern v. United States, 232 F. Supp. 7 (S.D. Fla. 1964) (age 99); Estate of Johnson v. Commissioner, supra (age 94). Nevertheless, as aptly stated by the Court of Appeals in Berman v. United States, 487 F. 2d 70 (5th Cir. 1973) at 72-73: the question is not whether he expected to die, but whether the [transfer] was motivated by the thought that he might die. To be precise, the estate's burden was not to prove that [the decedent] expected to live or intended to live, * * * but that the [transfer] was dominantly motivated by that expectation of continued life. It is not enough for the estate to show that decedent was in good health and did not anticipate immediate death. Section 2035 is not limited to gifts causamortis made in anticipation of a certain event. United States v. Wells, 283 U.S. 102, 51 S. Ct. 446, 75 L. Ed. 867 (1931); Treas. Reg.§ 20.2035-1(c). Rather, the estate has the task of persuading the court that the decedent had specific life motives In the alternative, if life motives cannot be proven, *427 petitioner must at least negate the presence of testamentary motives. That is its burden. In our opinion petitioner has done neither. The record establishes that decedent had little, if anything, to do with caring for the cattle during the several years preceding the gifts. This belies petitioner's assertion that the transfers were intended to relieve decedent of the responsibilities associated with maintaining the herd. Moreover, there is no evidence to suggest that the transfers were motivated principally by a desire to reward Richard and Ruby for their assistance in operating the farms.Thus, we conclude that petitioner has failed to rebut the presumption established by section 2035(b), and the value of the cattle ($ 60,000) must be included in decedent's gross estate. The final issue for our decision concerns the inclusion of decedent's residence in his estate by operation of section 2036(a)(1). Petitioner contends that the residence was part of the realty on which it was built, a lot which decedent never owned or caused to be purchased by Ruby and Cecil. Thus, petitioner argues, since decedent never had an interest in the house, he was unable to transfer any interest to Ruby *428 and Cecil from which a lifetime interest could be retained, thereby rendering section 2036 inapplicable. Respondent makes two arguments to the contrary. First, he contends that decedent constructed the house without reimbursement, making a gift of the required labor and materials for the house to Ruby and Cecil, and then retained a life estate in that house until his death. In the alternative, respondent contends that decedent did not pass his investment in the house to Ruby and Cecil until his death, in which case the value of the house is included in decedent's gross estate by virtue of section 2033. Finding parts of petitioner's argument unconvincing, we agree with respondent's first approach. The land upon which the house was built did belong to Ruby and Cecil and was not owned, purchased or caused to be purchased by decedent.However, decedent sponsored, without reimbursement, the construction of a house on the land in 1950.He then lived with his wife in the house from 1950 until his death in 1974. Even though petitioner apparently asks this Court to ignore the event, at some point in time the value of the house constructed by decedent passed to Ruby and Cecil. We think *429 the transfer of legal title took place upon completion of construction, at which time the house became a part of the realty on which it stood. See Cannonv. Hare, 1 Tenn Ch. 22 (1872). However, with the exception of this transfer, decedent retained all other interest in the house until his death. The retention of the beneficial enjoyment of the property by decedent for a period which did not in fact end before his death clearly satisfies the requirements for inclusion under section 2036(a)(1). See Guynn v. United States, 437 F. 2d 1148 (4th Cir. 1971); Estate of Honigman v. Commissioner, 66 T.C. 1080 (1976); Estate of Linderme v. Commissioner, 52 T.C. 305 (1969). Thus, we hold that the value of the residence, without regard to the land upon which it sits, is includable in decedent's gross estate. To give effect to the concessions of the parties and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. Petitioner has conceded the inclusion of an annuity which increases the taxable estate by $ 387.62, and respondent has conceded additional income tax and interest deductions which decrease the taxable estate by $ 5,778.05. The parties agree that those deficiency adjustments not conceded or in issue here are dependent upon our decision in this case of those adjustments which are in issue.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the year of decedent's death, unless otherwise noted.
3. The parties agreed at trial that the value of the smaller farm at decedent's death was $ 172,400, and that the value of decedent's residence was $ 25,000. Further, the parties stipulated the value of the 300 cattle to be $ 60,000.↩
4. Section 2036 provides in part: SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.↩
5. Section 2035, as in effect during the year of decedent's death, provided as follows: SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.
(a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Section 2035 has since been amended by section 2001(a)(5) of the Tax Reform Act of 1976, P.L. 94-455, 90 Stat. 1848, to require inclusion in the gross estate of the value of all property transferred by a decedent within three years of death, unless the transfer was for adequate and full consideration. Thus, under the amended statute the decedent's motives in making the transfer are no longer relevant.
6. See, e.g., Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, sec. 4.08 [8][b] (4th ed.); Lowndes, Kramer & McCord, Federal Estate and Gift Taxation, sec. 9.9, (3d ed.); Dodge, "Retentions, Receipts, Transfers, and Accumulations of Income and Income Rights: Ruminations on the Post-Byrum Role of Estate Tax Sections 2036, 2037, 2039, and 2043(a)," 58 Tex. L. Rev. 1, 73-87↩ (1979). 7. Although section 2036 is seemingly deficient in this respect, other Code sections contain specific provisions to deal with a pre-death disposition of an interest in property which might otherwise allow the property to escape inclusion in the estate of the transferor.For example, section 2035(b) (as in effect during the year in issue) expressly included property in the estate of a decedent who relinquished a power or exercised or released a general power of appointment within three years of his death.Similarly, section 2038(a), which brings into the gross estate any property transferred by the decedent over which he retained a power to alter, amend or revoke the conveyance, also requires inclusion of the full value of the property where any such power is relinquished within three years of death. Another manifestation of Congressional concern over the problem of lifetime relinquishment of retained interests has apparently surfaced in section 2036(b), as amended by section 702(i)(1) of the Revenue Act of 1978, P.L. 95-600, 92 Stat 2931. Section 2036(b)(1) currently provides that the retention of voting rights following a transfer of stock in a controlled corporation will be treated as a retention of enjoyment of the stock for purposes of section 2036(a)(1). To prevent the transferor from circumventing this provision by divesting his voting rights prior to death, section 2036(b)(3) provides that any relinquishment or cessation of such voting rights will be treated as a "transfer of property" for purposes of section 2035↩. Although it is not altogether clear from the language of the statute, presumably the term "property" refers to the stock itself, rather than the life estate which may be deemed to arise by virtue of the retained voting rights.